RAGESH K. TANGRI (CA SBN 159477)
RTangri@mofo.com
ADAM BRAUSA (CA SBN 298754)
ABrausa@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

WHITNEY R. O'BYRNE (CA SBN 325698)
WOByrne@mofo.com
LAURA LIVELY BABASHOFF (CA SBN 323922)
LLively@mofo.com
KATHERINE E. MCNUTT (CA SBN 320128)
KMcNutt@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:    213.892.5200
Facsimile:    213.892.5454

*Counsel continued on subsequent page*

Attorneys for Defendant
ANTHROPIC PBC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| REDDIT, INC., | Case No. 3:25-cv-05643-TLT |
| Plaintiff, | [PROPOSED] STIPULATED ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION |
| v. | |
| ANTHROPIC PBC, | Hearing: |
| Defendant. | Time: |
|  | Place: Courtroom 9, 19th Floor |
|  | Judge: Hon. Trina L. Thompson |

QUINN V. WALKER (CA SBN 336266)
QWalker@mofo.com
MORRISON & FOERSTER LLP
100 L Street, NW Suite 900
Washington, DC 20037
Telephone:     202.887.1500
Facsimile:      202.887.0763

GRACE YANG (CA SBN 286635)
gyang@conmetkane.com
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415.469.1715

Attorneys for Defendant
ANTHROPIC PBC

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Morgan W. Tovey (Bar No. 136242)
morgantovey@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Corey Worcester (Admitted *pro hac vice*)
coreyworcester@quinnemanuel.com
Stefan Berthelsen (Admitted *pro hac vice*)
stefanberthelsen@quinnemanuel.com
295 Fifth Ave.
New York, New York  10016
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

Attorneys for Plaintiff
REDDIT, INC.

1    [PROPOSED] STIPULATED ORDER FOR DISCOVERY OF ELECTRONICALLY
2                            STORED INFORMATION

3        Plaintiff Reddit, Inc. ("Reddit") and Defendant Anthropic PBC ("Anthropic") (together,
4    "the Parties") hereby acknowledge, agree, and stipulate as follows:

5                                    **PURPOSE**

6        1.    This Stipulation and Order regarding the production of Electronically Stored
7    Information ("ESI") and Hard Copy Documents (collectively, "Discoverable Information")
8    (hereinafter, the "Protocol") shall govern discovery of Documents in this case as a supplement to
9    the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of ESI, and any
10   other applicable orders and rules.

11                  **GOOD FAITH RESOLUTION OF DISPUTES**

12       2.    The Parties are aware of the importance the Court places on cooperation and
13   commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines
14   for the Discovery of ESI. The Parties shall make good faith efforts to comply with and resolve
15   any differences concerning compliance with this Protocol. If a Producing Party, notwithstanding
16   their good faith efforts, cannot comply with any material aspect of this Protocol or if compliance
17   with such material aspect would be unreasonable, such Party shall inform the
18   Requesting/Receiving Party in writing a reasonable time before the date of production as to why
19   compliance with the Protocol is impossible or unreasonable. No Party may seek relief from the
20   Court concerning compliance with the Protocol unless it has conferred in good faith with the
21   other     Party.

22                                    **LIAISON**

23       3.    The Parties have identified or will identify liaisons who are and will be
24   knowledgeable about and responsible for discussing their respective ESI. Each e-discovery
25   liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-
26   discovery, including the location, nature, accessibility, format, collection, search methodologies,
27   and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer

28

1  about ESI and to help resolve disputes without court intervention.

2  **PRESERVATION & SCOPE OF DISCOVERY**

3      4.    <u>Preservation Overview</u>. The Parties have discussed their preservation obligations

4  and needs and agree that preservation of potentially relevant ESI will be reasonable and

5  proportionate. The Parties will discuss the types of ESI they believe should be preserved, and the

6  custodians, or general job titles or descriptions of custodians, whose ESI should be preserved.

7      5.    <u>Continuing Obligation</u>: The Parties shall have a continuing obligation to take

8  reasonable and proportional steps to identify and preserve custodial and non-custodial data

9  sources that are likely to contain information that is relevant to the claims and defenses in this

10  litigation.

11      6.    <u>Locating and Preserving ESI</u>: The Parties agree that, subject to the limitations

12  below, potentially relevant ESI to be preserved includes, but is not limited to, email, message data

13  from enterprise messaging tools used in the course of business (*e.g.*, Slack, Microsoft Teams),

14  web-based documents (*e.g.*, Google Docs, OneDrive, SharePoint), and documents stored in

15  electronic central file repositories.  If the Producing Party is aware of inaccessible data that is

16  likely to contain unique, discoverable ESI, it will identify to the Receiving Party the source from

17  which it claims the data is not reasonably accessible and why the ESI is not accessible.

18      7.    <u>Custodians</u>: The Parties will agree on the number of custodians per party for whom

19  ESI will be preserved.  Once identified, the obligation to preserve such ESI extends only to the

20  identified custodians, and does not extend to non-custodial participants solely by virtue of their

21  inclusion in communications with a custodian. The Parties will meet and confer regarding the

22  designation of custodians.

23      8.    <u>Preservations Limitations</u>: The Parties agree that there is no need to preserve,

24  collect, review, or produce ESI that is not reasonably accessible. For purposes of this paragraph,

25  the Parties agree that the sources of ESI listed in Appendix I (forthcoming) are not reasonably

26  accessible and do not need to be preserved. The Parties will continue to meet and confer

27  regarding the contents of Appendix I, which governs the categories of data deemed presumptively

28

inaccessible and therefore exempt from the standard preservation obligations and will file an

amended ESI protocol regarding the preservation obligations for these categories of ESI

## **SEARCH AND REVIEW**

9.      <u>Search and Review Techniques</u>: The Parties will meet and confer to discuss the

use of search terms, filters, and date ranges.

10.      <u>Custodians and Keyword Searching</u>: The Parties agree to meet and confer

regarding the selection of appropriate custodians and keyword searches. The Producing Party is

responsible, in the first instance, for investigating and proposing search terms and custodians that

are calculated to accomplish a reasonable search for responsive material. The Parties should meet

and confer regarding the Producing Party's search terms and custodians in an effort to reach an

agreement. The Parties' meet and confer efforts on search terms and custodians are not a basis for

a Party to otherwise delay its search for or its production of documents in this action.

11.      <u>No Responsiveness Presumption</u>: The fact that a document is captured by a Party's

search process does not mean that such document is responsive to a discovery request, relevant to

this litigation, or will be produced.

12.      <u>Technology Assisted Review ("TAR") and Culling</u>. If a Producing Party is using

culling technology (including predictive coding/technology assisted review) for the purposes of

culling documents to be reviewed or produced, the Producing Party agrees to notify the Receiving

Party prior to use, disclosing the general type of culling technology used along with the categories

of sources to which it plans to apply culling techniques, with ample time to meet and confer in

good faith regarding a mutually agreeable protocol for the use of such technologies.

13.      <u>Noncustodial Repositories & Business Records Management</u>. Documents and

categories of documents that are relevant to this action and responsive to a party's document

requests, and that are regularly maintained in a known location, or in a location that is knowable

upon reasonable inquiry of those with knowledge about a party's document management, may be

collected and reviewed for responsiveness and privilege without the use of search terms or other

agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-

assisted-review).

14.     <u>Highly Confidential Technical Materials</u>. Nothing in this Protocol shall be construed as requiring Defendant to produce source code, training data and/or metadata that could capture the scope and nature of training data, model weights, unpublished technical specifications or capabilities research, information related to compute multipliers, secrets protecting any of the foregoing (i.e., encryption keys, credentials, etc.), or certain other voluminous or highly confidential technical materials. The discovery, if any, of the foregoing categories will be governed by separately negotiated access and inspection agreements. Nothing in this Protocol shall be construed as requiring a party to produce user conversation or output data without the parties first meeting and conferring about the same.

## **PROCESSING & FILTERING ESI**

15.     <u>De-NISTing System Files</u>: ESI collections may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.

16.     <u>Time Zones</u>: To the extent reasonably practicable, ESI should be processed with a consistent time zone within a Producing Party's productions, and the time zone used shall be disclosed to the Receiving Party. Absent an agreement to the contrary, the default time zone for processing shall be Pacific Standard Time.

17.     <u>Other Files and File Types Excluded</u>: The Parties may filter out the following files or file types:

        a.     ESI affected by ransomware or malware or otherwise has been corrupted or is unable to be processed without extraordinary efforts.

        b.     Temporary internet files, history, cache, cookies or other transitory forms of browser information.

        c.     ESI stored in application-specific formats that cannot reasonably be viewed, searched, or rendered in a reasonably usable format without specialized software that is not reasonably available or accessible to the Producing Party, or

1    that would require disproportionate effort to convert into a format suitable for

2    review.

3         d.    Files that are zero bytes in size (i.e., do not contain content).

4         e.    Other files or file types as agreed by the Parties.

5    18.    <u>Embedded Objects</u>: Embedded objects within ESI (*e.g.*, logos, icons, emoticons,

6    and footers) may be culled from production as separate items from the ESI within which they are

7    embedded (*e.g.*, email), provided the embedded objects are visible within the produced ESI (*e.g.*,

8    the company logo appears in the email signature line).

9    19.    <u>Deduplication</u>: Each party may produce only a single copy of a responsive

10   document and each party may de-duplicate responsive ESI (based on MD5, SHA-256, or other

11   comparable native document-level hash values (e.g., Google Drive's SourceHash)) across

12   custodians. The Parties shall deduplicate stand-alone documents against stand-alone documents

13   and shall deduplicate top-level email documents against top-level email documents.

14   Deduplication shall not break apart families. Attachments should not be eliminated as duplicates

15   for purposes of de-duplication, unless the parent document and all attachments are also

16   duplicates. The Parties agree that the following shall not be treated as duplicates, and may not be

17   removed as a means of culling the data set for production: (i) emails that include content in the

18   BCC or other blind copy field and emails that do not include content in those fields, even if all

19   remaining content in the email is identical; and (ii) "near-duplicate" documents, as identified

20   using e-discovery analytics tools.

21   20.    <u>Email Domains and Senders</u>: The Parties may filter out emails from domains and

22   senders typically associated with junk email and automated email notifications.

23   21.    <u>Password-Protected or Encrypted Files</u>: With respect to any password-protected or

24   encrypted ESI, the Parties will take reasonable steps based on industry standards to break the

25   protection so that the ESI can be reviewed and produced if appropriate.

26   22.    <u>Date Limitation</u>: The Parties may limit the collection and review of ESI to the

27   discovery time period agreed to by the Parties, or as set forth by the Court.

28

23. <u>Email Threading</u>: With respect to emails, the Parties agree that removal of wholly included, prior-in-time, or lesser-included versions of email threads is appropriate to reduce unnecessary volume in the review and production of emails. The Parties may use industry standard analytics tools to employ email thread suppression. For the avoidance of doubt, an earlier email may be treated as a lesser-included email that need not be produced only where the later email contains the entire text of the earlier email and all attachments to the earlier email. If the later email contains different text (including where the later email adds inline comments) or does not include an attachment that was part of the earlier email, the earlier email must be produced. Use of email threading may not serve to obscure whether a recipient received an attachment.

24. <u>Additional Filters</u>: If a Producing Party proposes to apply additional filters that identify common system files or non-user-generated files, the Producing Party will provide details regarding the filters, how they work, and what impact, if any, they will have on the collections or productions. The Receiving Party will have five (5) business days after such disclosure to object to the use of any such additional filters. In the event that the Parties cannot reach agreement, the Parties will meet and confer to address any disputes regarding the proposed additional filters.

## PRODUCTION FORMAT

25. The parties shall make productions in the format specified in Appendix II. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

## DOCUMENTS PROTECTED FROM DISCOVERY

26. Pursuant to Fed. R. Evid. 502(d) and the operative Stipulated Protective Order in this litigation, the production or disclosure of a privileged or work-product protected document, is not a waiver of any claim of attorney-client privilege and/or work product protection in connection with this or any other federal or state proceeding, or in other non-litigation matters. For example, the mere production of privileged documents in this case as part of a mass

production is not itself a waiver in this case or in any other federal or state proceeding, or in other non-litigation matters. Nothing contained herein, however, is intended to limit a Party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

27.     The Parties intend for this Protocol to provide the maximum protection allowed by Fed. R. Evid. 502(d). The Parties specifically disavow the application of Fed. R. Evid. 502(b).

28.     Activities undertaken in compliance with the duty to preserve information and at the direction of counsel are protected from discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A) and (B).

## MISCELLANEOUS

29.     This Protocol may be modified by a stipulation of the Parties or by the Court for good cause shown.

30.     Nothing in this Protocol shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Nothing contained herein limits a Producing Party's right to conduct a review of its own information for relevance, responsiveness, and/or to segregate privileged and/or protected information before production. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Discoverable Information.

31.     Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Discoverable Information. A party may only object to any such variance upon a showing of good cause.

32.     In general, the Producing Party will bear the costs of preserving, collecting, and producing documents. But if a Receiving Party requests Discoverable Information that would

1   result in the production of cumulative or repetitive discovery, or that otherwise would impose an

2   undue burden or expense on a Producing Party, the Producing Party may object. The Parties shall

3   work to resolve any such objection. If the Parties are unable to resolve such an objection, the

4   Producing Party may move the Court for an order shifting some or all of the cost of producing

5   such discovery to the Receiving Party.

6        33.     The Parties intend to file with the Court a separate Stipulated Protective Order

7   governing production and treatment (including but not limited to redaction) of confidential

8   information. The terms of that Stipulated Protective Order will also apply to all productions

9   pursuant to this Protocol.

10       34.     Further, nothing herein is intended to prevent either Party from complying with the

11  requirements of any applicable country or state's data privacy laws.

12       **IT IS SO STIPULATED**, through Counsel of Record.

13

14  Dated: March 4, 2026                    _____
                                                    */s/ Corey Worcester*
15                                            Counsel for Plaintiff Reddit, Inc.

16  Dated: March 4, 2026                    _____
                                                     */s/ Ragesh Tangri*
17                                           Counsel for Defendant Anthropic PBC

18       **IT IS ORDERED** that the forgoing stipulated ESI protocol is approved.

19  Dated:  March 4, 2026                   _____

20                                                HON. TRINA THOMPSON

21

22

23

24

25

26

27

28

1    **<u>APPENDIX I - DOCUMENTS THAT ARE NOT REASONABLY ACCESSIBLE</u>**

2        [TO BE NEGOTIATED]

1

2 <u>**APPENDIX II - PRODUCTION DELIVERY AND FORMAT**</u>

3    a.    <u>Rolling Production</u>: The Parties agree to make productions on a rolling basis when

4 practicable. The Parties will communicate about their respective priorities for production and

5 agree to respond to reasonable requests for prioritized production as feasible, taking into account

6 principles of proportionality, including the volume of information at issue, the relative

7 accessibility of information, efficiencies in the process of search and review, and the additional

8 processing time required for certain types of ESI.

9    b.    <u>Supplemental Production</u>: The Parties reserve the right to supplement productions

10 as needed.

11    c.    <u>Numbering/Endorsement</u>: All produced Discoverable Information will have a

12 unique Control ID assigned ("Bates number"), regardless of format, and the file produced will be

13 named with the unique Control ID. For Discoverable Information produced in TIFF image

14 format, each TIFF image will have a legible, unique page identifier ("Bates number")

15 electronically endorsed or "burned" onto the image at a location that does not obliterate or

16 obscure any information from the source document. A Producing Party should use a consistent

17 format for the Bates numbers it uses across its productions.

18    1.    In the case of materials deemed confidential in accordance with any

19       applicable federal, state, or common law, pursuant to a protective order entered by

20       the court or confidentiality stipulation entered into by the Parties, those materials

21       will be marked accordingly.

22    2.    The Parties agree to meet and confer if there are any disputes regarding the

23       specific details of numbering and endorsement format.

24    d.    <u>Production of Short Message Data</u>: Electronic messages exchanged between users

25 on enterprise messaging tools used in the course of business (*e.g.*, Slack, Microsoft Teams) shall

26 be produced in a searchable format that preserves the conversational relationship and

27 presentational features of the original messages, such as emojis, images, and animations.

28

Attachments to such messages containing source code need not be produced in the first instance. If a Receiving Party identifies a particular source code attachment as relevant and responsive and requests production, the Parties will meet and confer regarding that request. Electronic messages must not be converted to unitized files that contain less than a 24-hour period of conversation, unless the 24-hour period of conversation results in an unusually large or unwieldy production. In that case, a shorter time window may be used, applied reasonably and consistently. Redactions may be applied to privileged portions of a conversation and to sensitive personally identifiable information, including highly sensitive personal data. To the extent electronic messages cannot be produced in a reasonably usable format, the Parties will meet and confer to address the identification and production format of short message data.

e.    Documents Containing Internal Hyperlinks: Documents or messages (*e.g.*, emails, documents, Slack or Teams messages) may contain internal hyperlinks to websites, other messages, documents, or other items stored on a system within or outside a Producing Party's possession, custody, or control (*e.g.*, an internal document management and collaboration system like Google Drive, Microsoft SharePoint, or Microsoft OneDrive). The Parties agree that the existence of an internal hyperlink does not require the Producing Party, in the first instance, to treat the linked document or message as an attachment or to produce the linked document or message as part of the same family group as the document or message containing the hyperlink. If the Receiving Party identifies specific hyperlinks for which the hyperlinked document or message cannot be located elsewhere in the production, the Receiving Party may submit to the Producing Party a list identifying the hyperlinks within produced documents identified by Bates number. The Producing Party will make reasonable efforts to locate the linked document or message at the hyperlinked location and will either (i) identify it by Bates number if already produced or (ii) produce it if not already produced and not privileged. Each Party may make requests for up to five hundred hyperlinks that appear in produced ESI. If a Receiving Party believes that more requests are warranted upon a showing of good cause, and the Producing Party has not agreed to produce additional hyperlinked documents, then the Parties shall meet and confer and may raise

1   any remaining dispute with the Court.

2

3       f.      Production of Structured Data: Discoverable Information that is stored in a

4   database (i.e., structured data) will be produced in a data table, CSV file, Excel file, or other

5   delimited text format, or in reasonably usable standard report formats available in the ordinary

6   course of business. The Parties will meet and confer regarding the exchange of explanations of

7   any data fields, codes, abbreviations, field names, and other information reasonably available and

8   necessary to ensure that the structured data is reasonably usable and understandable.

9       g.      Document Versions: The Parties agree to produce the latest in time version of

10  documents stored on a collaboration or document management tool available at the time of

11  collection.  The Receiving Party may request previous versions of documents.  The Receiving

12  Party must identify the document(s) with specificity (e.g., Bates number and, if reasonably

13  ascertainable, specific dates, of previous version(s) of the document), and must also demonstrate

14  good cause for the potential production of any such prior version (i.e., a fact-specific showing that

15  the requested previous version is likely to reveal non-duplicative relevant information not

16  contained in the produced version). The Producing Party shall comply with such requests to the

17  extent such production is reasonably practicable. The Parties will meet and confer and may raise

18  any remaining dispute with the Court.

19      h.      Reproduction of Natives: The Parties agree that to the extent any Party seeks

20  production in native format of specifically identified ESI produced originally in TIFF form, the

21  Producing Party shall respond reasonably and in good faith to any such request.

22      i.      Document Image Format

23          1.      The Parties will produce all Documents in Group IV single-page TIFF

24  format, black and white, 300 dpi, unless specified otherwise below.

25          2.      The Parties will produce all documents with both load files, as specified

26  below, and metadata files, as specified in Appendix III.

27      j.      Hard Copy Documents. The Parties shall scan all Hard Copy Documents and

28

produce them electronically as images, using best efforts to have their vendors unitize documents correctly. Reasonable efforts shall be employed to scan pages in the same order in which they are maintained in the ordinary course of business; to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document; and to treat documents that clearly appear to be separate documents as separate documents. For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels or tabs shall be scanned where reasonably practicable. Original document orientation (i.e., portrait or landscape) shall be maintained to the extent practicable. The Parties commit to address situations where there are improperly unitized documents. The Parties agree to provide the following objective coding to scanned Hard Copy Documents, if applicable and/or available: beginning Bates number; ending Bates number; file name (beginning Bates number with .tif file extension); beginning attachment Bates number; ending attachment Bates number; page count; and source location/custodian.

k.    <u>Color Documents</u>. Color documents (*e.g.*, color photographs or graphical representation in color) shall be produced in black and white except the Receiving Party may request higher resolution TIFF images or color images to render the image legible, understandable, or more usable; following such a request, the Parties may meet and confer about such production.

l    Emails will be produced with the CC and BCC line displayed in the image.

m.    The Parties will provide full extracted text in the format of a single *.txt file for each file (*e.g.*, not one *.txt per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be produced in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning Bates number of the file. The full path of the text file must be provided in the *.dat data load file.

n.    <u>Hidden Text</u>. ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked

changes, redlines and comments. Upon request, a Producing Party will produce files with any such information in Native Format.

o.      <u>Native File Production</u>. The parties will produce the following ESI in Native Formats with the metadata specified in Appendix III rather than document image format: spreadsheets (*e.g.*, *.xls, *.xlsx, *.csv), presentation files (*e.g.*, *.ppt, *.pptx, *.odp), audio or audiovisual files (*e.g.*, *.mp4, *.avi, *.mov, *.m4a, *.mp3). Redacted ESI may be redacted natively, as feasible, or produced as redacted TIFFs with applicable, non-privileged metadata and OCR searchable text.

p.      <u>Document Unitization</u>. If any member of an email family is responsive, the entire family (both the email and the attachments) will be produced. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. Where feasible, the child document(s) should be consecutively produced immediately after the parent document. For further clarification, this shall not require a party to produce documents merely referenced in responsive documents.

q.      <u>Load Files</u>. There will be two Load/Unitization files accompanying all productions. One will be the image load file and the other will be the metadata load file. Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: either standard Concordance (DAT) or comma delimited (CSV).

1.      <u>Image Load File</u>.

i.      All image data should be delivered with a corresponding image load file in one of three formats: standard IPro (LFP), Opticon (OPT) or Summation (DII).

ii.      Every document referenced in the product load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

iii.      Documents shall be produced in only one image load file

throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

    iv.    The name of the image load file shall mirror the name of the delivery volume, and should have a lfp., opt, or .dii* extension (*e.g.*, ABC00l.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.) *If a dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.

    v.    The load file shall contain one row per TIFF image.

    vi.    Every image in the delivery volume shall be contained in the image load file.

    vii.    The image key shall be named the same as the Bates number of the page. Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.). A separate volume shall be created for each piece of media delivered.

    2.    <u>Metadata Load File</u>. The metadata fields associated with each Electronic Document or Data or ESI, to the extent they are available, will be produced as specified in the attached Appendix III.

    r.    <u>Production Media</u>: The Producing Party may produce via a secure file transfer mechanism and/or on readily accessible, computer or electronic media such as an external hard drive ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Receiving Party in a communication separate from the production itself.

    s.    <u>Embedded Documents</u>: Embedded documents from ESI (*e.g.*, spreadsheets embedded within word processing documents or within PowerPoint presentations) will, to the extent possible, be extracted and treated as child documents and related back to their top-level parent documents (*e.g.*, standalone file, email message, etc.).

### APPENDIX III – METADATA

| Field Name | Field Description | Required for Email | Required for Non-Email and Non-Messaging ESI | Required for Short Message Data ESI |
|---|---|---|---|---|
| BegBates | Beginning Bates number (including Prefix) | x | x | x |
| EndBates | Ending Bates number (including Prefix) | x | x | x |
| ParentBates | Beginning Bates number for the parent email of a family (will not be populated for documents that are not part of a family) | x | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in documents with attachments) | x | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in documents with attachments) | x | x | x |
| AttachCount | Number of attachments to a document | x | x | x |
| AttachRange | Bates range beginning with BatesBeg and ending with BatesEndAttach (will not be populated for documents that are not part of a family) | x | x | x |
| CustodiansAll | Name of all custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | x | x | x |
| Confidentiality Designation | Confidentiality Designation | x | x | x |

| Field Name | Field Description | Required for Email | Required for Non-Email and Non-Messaging ESI | Required for Short Message Data ESI |
|---|---|---|---|---|
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | x | x | x |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x | |
| DateLastmodified | The application recorded time on which the document was last modified | | x | |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | | |
| TimeSent | Time email was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | x | | |
| TimeRcvd | Time email was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | x | | |
| Author | Author field extracted from the metadata of a non-email document | | x | |
| From | From field extracted from an email message | x | | |

| Field Name | Field Description | Required for Email | Required for Non-Email and Non-Messaging ESI | Required for Short Message Data ESI |
|---|---|---|---|---|
| To | To or Recipient field extracted from an email message | x | | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | | |
| Title | Title field extracted from the metadata of a non-email document | | x | |
| Filename | File name — Original name of file as appeared in original location | | x | |
| EmailSubject | Subject line extracted from an email message | x | | |
| FilePath | File path storage location of the document or email if the source application allows for the creation of folders | x | x | |
| FileExtension | File extension of native file | x | x | x |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data and uniquely identify each Native document | x | x | x |
| MsgID | Unique Message ID field | x | | |
| Email Thread ID | Email threading ID | x | | |

| Field Name | Field Description | Required for Email | Required for Non-Email and Non-Messaging ESI | Required for Short Message Data ESI |
|---|---|---|---|---|
| NativeLink | Relative path to any files produced in native format | x | x | x |
| HiddenContent | Denotes presence of Tracked Changes/ Hidden Content/ Embedded Objects in item(s) (Y/N) | | x | |
| TextLink | Relative path to any OCR/extracted text files in the production set | x | x | x |
| ChatSource | Messaging service name (Slack, Google Chat, Microsoft Team, etc.) | | | x |
| ChatName | Name of message channel/group | | | x |
| ChatParticipants | List of message channel/group participants | | | x |
| ChatThreadID | Unique Chat ID field | | | x |
| ChatStartDate | Date that messages started (mm/dd/yyyy format) (based on parsing) | | | x |
| ChatEndDate | Date that messages ended (mm/dd/yyyy format) (based on parsing) | | | x |
| ChatStartTime | Time messages started (hh:mm:ss format) (based on parsing) | | | x |
| ChatEndTime | Time messages ended (hh:mm:ss format) (based on parsing) | | | x |